IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 0 8 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| CONNIE KAUGER, ) | Civil Action No. 5:05CV00022 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| JO ANNE B. BARNHART, ) | United States District Judge |
| Commissioner of Social Security ) | |
| Defendant. ) | |

Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1383 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If substantial evidence exists for the Commissioner's findings, and those findings were reached through application of the correct legal standard, the conclusion must be affirmed. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a mere scintilla of evidence, but may be less than a preponderance. Laws v. Celebrezze, supra.

The plaintiff, Connie F. Kauger, was born on August 23, 1971. She completed high school in June 1989. Ms. Kauger has past work experience as a telemarketer, stocker and cashier, sweeper, and information operator. She filed an application for disability insurance benefits and supplemental security income on December 14, 2001, alleging that she became disabled on April 1, 1999. For purposes of the claim for disability insurance benefits, the record reveals that the plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See 42 U.S.C. §§ 414 and 423.

Ms. Kauger's claims were denied upon initial consideration and reconsideration. She requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held and the ALJ issued an opinion on July 17, 2003, denying Ms. Kauger's claim for a period of disability, disability insurance benefits, and supplemental security income. The ALJ found that plaintiff was not under a "disability" as defined in the Act, even though her back disorders and pain were "severe" impairments within the meaning of the administrative regulations, because her impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. §§ 404.1520(d) and 416.920(d). Furthermore, the ALJ determined that the plaintiff had the residual functional capacity to perform a full range of sedentary work activity, sit approximately 6 hours in an 8-hour workday, and lift no more than ten pounds. Applying the five step sequential disability analysis established under 20 C.F.R. §§ 404.1520 and 416.920, the ALJ concluded his consideration of Ms. Kauger's case after determining that she was capable of performing past relevant work as a telemarketer or information operator.

2

Case 5:05-cv-00022-GEC    Document 17    Filed 12/08/05    Page 2 of 12    Pageid#: 62

The initial consideration for determining a claimant's disability is whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Ms. Kauger briefly worked as telemarketer and cashier after her alleged onset date of April 1, 1999, but the ALJ determined that neither of these positions rose to the level of substantial gainful activity. 20 C.F.R. §§ 404.1572 and 416.972.

The second and third inquiries under §§ 404.1520 and 416.920 concern the severity of the claimant's impairments. The ALJ found that Ms. Kauger's back disorders and pain are severe, but that her impairments do not meet or medically equal a listed impairment. (TR 25). The fourth factor for consideration is whether the impairment prevents the claimant from performing her past relevant work. The ALJ concluded that, because she had the residual functional capacity for sedentary work, Ms. Kauger was able to return to her previous work roles as a telemarketer or information operator. (TR 27). The ALJ did not reach the fifth consideration as to whether other work roles that the claimant could perform exist in significant number in the national economy because he found that she could return to a past relevant work role as it is generally performed in the national economy. Thus, the ALJ denied Ms. Kauger's claims for benefits under both programs. See 20 C.F.R. § 404.1520(f) and 416.920(f).

Subsequent to the ALJ's decision, Ms. Kauger filed a request for review with the Social Security Administration's Appeals Council. On February 18, 2005, the Appeals Council denied plaintiff's request and adopted the ALJ's opinion as the final decision of the Commissioner. Having exhausted all administrative remedies, the plaintiff now appeals to this court.

Although a plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment.

3

Case 5:05-cv-00022-GEC   Document 17   Filed 12/08/05   Page 3 of 12   Pageid#: 63

See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

The record in Ms. Kauger's case establishes that the Commissioner's final decision is supported by substantial evidence. The ALJ's opinion reflects a thorough review of the opinions of the physicians who examined Ms. Kauger. The ALJ carefully considered the plaintiff's statements regarding her alleged symptoms and he determined the extent to which these symptoms could reasonably be accepted as consistent with the objective medical record and other evidence. Therefore, there is substantial evidence to support the Commissioner's finding that the plaintiff is not disabled.

In her claim for disability benefits, Ms. Kauger stated that a bulging disc in her lower back and corresponding pain and numbness in both legs first began to bother her on July 2, 1997, and that her symptoms became disabling on April 1, 1999. On July 2, 1997, the plaintiff suffered a hip injury after being struck by falling objects weighing a total of 125 pounds. (TR 186). The administrative record reflects Ms. Kauger's visit to the emergency room on April 16, 1998 for treatment of an acute right hip pain. (TR 163). The treating physician noted that she had been seen by her primary care physician and orthopedist, but no specific diagnosis had been reached, "despite plain radiographs and MRI scans." (TR 163).

Ms. Kauger saw Dr. Thomas J. Spicuzza for treatment in 1998, and on December 15, 1998, he determined that she should have "plain spine films as well as an MRI scan" to help decide whether her lower lumbrosacral spine could be healed by therapy or if surgery would be required. (TR 187). The radiologist reported that the results of the lumbar spine series "show well-aligned lumbar bodies. There is no disc space narrowing seen. No spondylolysis or sponylolisthesis is present..." and that his impression was of a "[n]ormal lumbosacral spine." (TR 252). With respect to the MRI scan of Ms. Kauger's lumbar area, the radiologist reported that she had a "[g]eneralized annular bulge at L3-4 without evidence of disc herniation or disc protrusion." (TR 252-53).

The plaintiff was referred to Physical Therapist Barbara M. Woodward by Dr. Victor C. Lee on January 27, 1999. (TR 189, 205). On February 2, 1999, Ms. Woodward noted that Ms. Kauger had a lateral lean to the left when standing and an "antalgic gait pattern with decreased right stance time." (TR 196). The physical therapist also observed that Ms. Kauger's "[b]ilateral lower extremities [were] within normal limits," but that her lumbar extension and flexion were limited due to lower back pain. (TR 197). Ms. Woodward assessed Ms. Kauger's functional limitations as: "sitting greater than 15 minutes, walking greater than 50 yards, standing greater than 30 minutes, squatting, bending, ascending/descending steps, donning and doffing shoes and socks, and crossing her legs." (TR 197). The predicted outcome of the therapy plan was that Ms. Kauger would be able to do the following with minimal to no lower back or right leg pain: don and doff shoes and socks, sit for 30 minutes, walk one quarter mile, perform a full squat to pick items up from the floor, and ascend/descend one flight of stairs. (TR. 197). However, the discharge summary indicates that the "[g]oals were not met," and that Ms. Kauger continued to

5

have significant pain, despite having attended 18 of 22 physical therapy appointments and having complied with the home program designed for her. (TR 204).

On June 29, 1999, Ms. Kauger underwent a procedure involving selective injection of the lower right sided lumbar nerve roots in an attempt to better treat her back pain. (TR 271). On July 27, 1999, she had the procedure repeated in order to "get a more sustained effect." (TR 274).

Ms. Kauger began seeing Dr. Richard Whitehill and other doctors at the University of Virginia Health System on August 16, 1999. (TR 336). On that date, Dr. Whitehill noted that "L3-4 has mild degenerative disc disease with a mild diffuse disc bulge and minimal central canal stenosis. There is an annular tear." (TR 336). Later on in his treatment of Ms. Kauger, Dr. Whitehill ordered a lumbar myelogram and post myelogram CT scan. (TR 322-24). Drs. Jeffrey M. Huggett and Wayne S. Cail observed that the myelogram revealed "[a] mild ventral thecal sac defect is present at this time. The nerve roots at these two levels are difficult to visualize, however, they do appear to fill normally," and the CT showed a "mild central disc bulge at L3-4 causing minimal impression on the thecal sac. It does not appear to be [a]ffecting the nerve roots...." (TR 323-34). Dr. Whitehill ordered a brace for Ms. Kauger to wear in addition to intradiskal electrothermal therapy, but Ms. Kauger declined to undergo the therapy. (TR 295-96).

Dr. Whitehill performed an anterior diskectomy and fusion of the L3-L4 with Kaneda instrumentation and synthes cortical allograft with iliac crest bone graft on Ms. Kauger on October 18, 1999. (TR 359). The surgery was successful, but Ms. Kauger experienced "protective muscle spasms due to disuse and apprehension over re-injury," according to her physical therapist. (TR 364).

The plaintiff underwent a lumbar epidural steroid injection on February 2, 2000 to relieve her back and leg pain. (TR 320). The physician who performed the procedure stated that it was successful, however, on February 22, Dr. Whitehill wrote that "[t]he epidural steroid injection did not help her," and ordered a nerve root injection. (TR 289). Ms. Kauger had a selective nerve block on February 22, 2000, for radicular symptoms related to the left L3 and L4 nerve roots. (TR 316). On May 11, 2000, Ms. Kauger went to the emergency room with complaints of lower back pain. The examining physician thought that the problem was caused by lumbar strain, and noted that X-rays of the lumbar spine showed no signs that the hardware was loosening. (TR 287). Shortly thereafter, on May 18, 2000, the plaintiff saw Dr. Robert D. Zura to discuss her condition. Dr. Zura noted that the plaintiff said she did not need to do further therapy, and that she indicated that she would not need to be seen before her already scheduled July appointment. (TR 286). On October 25, 2001, Ms. Kauger was seen for an MRI of her lumbar spine. (TR 306). The doctors characterized her retroperitoneum and paraspinal tissues as "grossly normal," and found her spinal cord termination level, marrow signal, and lumbar spine alignment to be normal. (TR 306). Dr. Whitehall noted that "[h]er MRI does not show a reason for her to have leg numbness or pain." (TR 279).

The precise source of Ms. Kauger's pain also confounded Drs. Annemarei Wittmann and Nina J. Solenski, who conducted an outpatient neurological exam. (TR 395-97). They noted that "[t]his is not a very clear cut case. [Her lack of right knee jerk] may represent bilateral radiculopathy although it would be quite unusual to have such a symmetric and non-dermatonal distributions." (TR 396). Dr. Wittmann later opined on February 14, 2002 that the plaintiff had

7

"quite [a] different distribution of symptoms than her last visit which makes placement of a single lesion difficult." (TR 432).

On March 31, 2003, Drs. Karthikram Raghuram and C. Douglas Phillips performed a lumbar myelogram and post myelogram CT scan. (TR 445). The doctors noted that there was "[m]inimal end-plate degenerative disease at L3-4," "[d]iffuse disk bulge...at L4-5," "[m]ild diffuse disk bulge at L5-S1," and "[n]o significant stenosis." (TR 446).

Dr. R.S. Kadian completed a medical consultation on August 31, 1999 in which he concluded that the plaintiff had the following exertional limitations: lift or carry 50 pounds occasionally, lift or carry 25 pounds frequently, sit about six hours in an eight hour workday, and unlimited ability to push or pull. (TR 348). However, Dr. M. Morjaria also completed a medical consultation on December 27, 1999 in which she found that the plaintiff could only occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds, and stand or walk at least two hours in an eight hour workday. (TR 367). Both medical consultants reported the plaintiff's complaints of blackouts, but Dr. Morjaria noted that the plaintiff's "EEG was negative for a seizure disorder." (TR 370). Dr. Morjaria further stated that as a result of her recent back surgery, the plaintiff's "pain is credible and expected." (TR 371). Dr. Kadian completed another consultation on May 28, 2002, which indicated some diminishment in her exertional capacities, namely, that she could occasionally lift or carry only 20 pounds and frequently lift or carry only ten pounds. (TR 411).

Dr. Whitehill completed a Residual Functional Capacity Questionnaire on April 14, 2003, in which he indicated that Ms. Kauger's impairments had lasted or were expected to last at least 12 months. (TR 451). He further stated that the plaintiff was capable of low stress jobs and

8

estimated that she would need to be absent from work more than four days per month as a result of her impairments. (TR 454). On April 8, 2003, Dr. Whitehill stated that Ms. Kauger's CT myelogram "shows a very small disc bulge at L4-5 and L5-S1," and that "I certainly do not think it is large enough to operate on." (TR 475). Later that month, Dr. Whitehill had Ms. Kauger fitted with a cane. (TR 478).

At oral argument before this court, the plaintiff asserted that the ALJ erred in treating the plaintiff's previous employment as a telemarketer and information operator as past relevant work. However, the ALJ's decision that the plaintiff's prior work as an information operator was past relevant work as defined in 20 C.F.R. § 404.1565(a), is supported by substantial evidence.[1] The ALJ noted that Social Security Ruling 82-61 provides that an individual will be found "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of the occupations as generally required by employers in the national economy. (TR 27). Because Ms. Kauger is capable of performing a full range of sedentary work activity, including sitting approximately six hours in an eight hour workday, the ALJ correctly determined that she could return to her past work as an information operator.

---

[1] The ALJ stated that "[t]he evidence in this case establishes that the claimant has past relevant work as a telemarketer and information operator." (TR 27). Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). The plaintiff's work as a telemarketer after April 1, 1999 was effectively deemed not substantial gainful activity by the ALJ. (TR 19, "The claimant has not engaged in substantial gainful activity since her alleged onset date."). However, the plaintiff held her information operator position between January 1998 and January 1999, during which time she earned $10,711.64, and therefore this work qualifies as substantial gainful activity. 20 C.F.R. § 404.1572. (TR 77, 97). There is not substantial evidence to show that her work as a telemarketer was substantial gainful activity. (TR 133).

9

Case 5:05-cv-00022-GEC   Document 17   Filed 12/08/05   Page 9 of 12   Pageid#: 69

The ALJ based his decision that the plaintiff has the residual functional capacity to return to her previous work as an information operator on his finding that her allegations of total incapacitation resulting from her impairments are inconsistent with the objective medical findings and complete record evidence. This court's review of the record constrains the court to agree with the ALJ's assessment. The plaintiff stated that she has discontinued her medications and that she felt that she had gone as far as possible in physical therapy. (TR 495-95). In completing a Daily Activities Questionnaire on January 22, 2002, Ms. Kauger indicated that she spends the majority of her days caring for her infant child. Her activities include reading, playing with the child, and watching television. (TR 141-44).

Although the court believes that the ALJ's decision that Ms. Kauger could return to her past relevant work role as an information operator is supported by substantial evidence, the same result would obtain even if her previous work had not qualified as substantial gainful activity. Given plaintiff's residual functional capacity for sedentary exertion, and considering Ms. Kauger's age, education, and prior work experience, the medical vocational guidelines would direct a determination of not disabled, even had the case proceeded to the fifth and final stage of the sequential disability analysis. See 20 C.F.R §§ 404.1569 and 416.969; Rule 201.27-29 of Appendix 2 to Subpart P of the Administrative Regulations, Part 404. Thus, the court believes that the Commissioner's denial of benefits in this case is consistent with the record, even assuming disability for past relevant work.

Based on this record, the court concludes that the Commissioner's final decision is supported by substantial evidence. The ALJ's opinion, which was adopted by the Commissioner, demonstrates a thorough review of plaintiff's statements, testimony, and relevant work history, as

10

well as the evaluations of her treating physicians. The conclusion that plaintiff has residual functional capacity for her past relevant work role is supported by substantial evidence, including plaintiff's medical records. Consequently, the record supports the Commissioner's determination that plaintiff is not disabled.

As a result of finding substantial evidence to support the Commissioner's determination of nondisability, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's decision, the court does not imply that the plaintiff is completely free from symptoms that would constrain her capacity to work. However, there is substantial evidence to support the ALJ's opinion that plaintiff has the residual functional capacity to perform her past relevant work as an information operator. This residual functional capacity disqualifies Ms. Kauger from receiving a period of disability, disability insurance benefits, and supplemental security income. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). It appears that the ALJ gave full consideration to all the relevant factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

11

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 5th day of December, 2005.

*/s/ Glen E. Conrad*

United States District Judge